IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ANTHONY JAI BROWN**                                                              **PLAINTIFF**

v.                                           CIVIL ACTION NO. 3:18-CV-528-DPJ-JCG

**WARDEN CHERON NASH, et al.**                                         **DEFENDANTS**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the Motion to Dismiss or for Summary Judgment (ECF No. 21) and Memorandum in Support (ECF No. 22) filed by Defendants Warden Cheron Nash, Associate Warden Sylvester Jenkins, and Special Investigative Supervisor Technician Reginald Dean. Plaintiff Anthony Jai Brown has filed a Response in Opposition (ECF No. 23) and Defendants have filed a Reply (ECF No. 25). Having considered the submissions of the parties, the record, and relevant legal authority, the undersigned recommends that the Motion to Dismiss or for Summary Judgment (ECF No. 21) be granted in part and denied without prejudice in part.

## I. BACKGROUND

Plaintiff Anthony Jai Brown, who is presently incarcerated in the United States Penitentiary in Beaumont, Texas, filed suit against Warden Cheron Nash, Associate Warden Sylvester Jenkins, and Special Investigative Supervisor Technician Reginald Dean on August 7, 2018. He alleges that while at the Federal Correctional Institution in Yazoo City, Mississippi in 2017, he complained and filed grievances about various issues he encountered, including harassment while

1

working in the law library, diminished work hours, his case manager's failure to address his needs, a mice infestation in the dining hall, and the closure of the kitchen. He contends that Nash and Jenkins' failure to address his complaints violated his First Amendment right to seek redress of grievances. He also asserts a conditions of confinement claim against Nash for the unsanitary food service conditions.

Brown's complaints culminated in an incident on September 24, 2017. He alleges that because the law library was frequently closed during scheduled operating hours, he asked Nash and Jenkins to open it. In response, Jenkins ordered Brown to go to the Lieutenant's office. Once there, Brown states that Jenkins ordered him to go inside "the cage." Because Brown believed that he should not be punished, he questioned the order. When Jenkins again ordered him to go inside the cage, Brown states he "turned [his] back, and offered to be taken to the [segregated housing unit] in a non-hostile protest to having to stand in the claustrophobic cage for no legitimate purpose" (ECF No. 1 at 8). Jenkins then sprayed Brown once in the back of the head and once in his face with a chemical spray. Brown argues that each Defendant is liable for the alleged excessive use of force.

In light of this incident, Brown was taken to the segregated housing unit for a few days before being transferred to the United States Penitentiary in Coleman, Florida, a higher security prison. He contends that these actions were taken in retaliation for his complaints. Because he never received an incident report, an

administrative detention order, or a hearing, he claims his due process rights were violated. He also contends that his right to equal protection was violated because other prisoners in the segregated housing unit received a report, order, or hearing. He also contends that Dean has violated his due process and equal protection rights because he failed to preserve allegedly exculpatory surveillance footage and "falsified a narrative" regarding the incident (ECF Nos. 1 & 8).[1]

On April 5, 2019, Defendants filed a Motion to Dismiss or for Summary Judgment (ECF No. 21) and a Memorandum in Support (ECF No. 21). They argue that Brown failed to exhaust his administrative remedies with respect to all claims except his First Amendment claim and his Eighth Amendment excessive force claim; his excessive force claim is not cognizable under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971); Defendants are entitled to qualified immunity on his First Amendment Claim; and his excessive force and First Amendment claims fail to satisfy the pleading requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## II. DISCUSSION

### A. Legal Standards

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its

---

[1] Originally, Brown also claimed that the Defendants were liable for violations of 18 U.S.C. § 1001. In his Response to the Defendants' Motion, he indicates that he is abandoning this claim (ECF No. 23 at 11). Therefore, the undersigned will not address any allegations pertaining to this claim.

3

face." *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014) (citing *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). The Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014).

Under Federal Rule of Civil Procedure 56, summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). If the movant carries this burden, the burden shifts to the non-moving party to show that summary judgment should not be granted. *Id.* at 324. "The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 324). In the absence of any proof, the Court will not assume that the Plaintiff "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## B. Exhaustion

Because Brown is a prisoner pursuing a civil action seeking redress from government employees, the Prison Litigation Reform Act (PLRA) applies and requires prisoners to exhaust available administrative remedies before filing a lawsuit. 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) (the exhaustion requirement applies to federal prisoners who sue under *Bivens*). This exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). A prisoner's failure to exhaust available administrative remedies undermines these purposes.

"The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." However, "[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ." *Id.* at 95. Dismissal is mandatory where a prisoner fails to properly exhaust available administrative remedies before filing suit in federal court. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (quoting *Woodford*, 548 U.S. at 85).

The Bureau of Prisons (BOP) has a four-step grievance procedure. First, the prisoner is to seek informal resolution with prison staff, using form BP-8. If unsuccessful, the prisoner next makes a formal request to the Warden via form BP-9. If still unsatisfied, the prisoner may appeal to the Regional Director using form BP-10, and finally, the prisoner can pursue a national appeal to the office of the General Counsel using form BP-11. *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (citing 28 C.F.R. §§ 542.13-15).

In order to satisfy the exhaustion requirement, "an inmate's grievances must be sufficiently specific to give 'officials a fair opportunity to address the problem that will later form the basis of the lawsuit.'" *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004)). However, a prisoner does not necessarily have to identify an individual by name. *Patterson v. Stanley*, 547 Fed. App'x 510, 512 (5th Cir. 2013) (citing *Johnson*, 385 F.3d at 522).

Defendants assert that Brown only pursued one grievance, Remedy ID 928634, to completion. They argue that this grievance only relates to his excessive force and First Amendment Claims (ECF Nos. 21-2 & 22). Brown does not contest the fact that he only pursued this one grievance through all four steps; however, he argues that this request "plainly articulates all his issues that are now before the court" (ECF No. 23 at 3).

Brown originally tried to file his request as "sensitive" with the Regional Director on November 13, 2017. He stated it was an employee misconduct complaint against Nash and Jenkins, claiming they endangered his safety or caused injury, gave preferential treatment, falsified material facts, engaged in dishonest and disgraceful conduct, and engaged in conduct that could lead others to question their impartiality (ECF No. 1-1 at 2). In his attachment, he references the complaints he made that had not been addressed, the alleged excessive use of force, the lack of an incident report or detention order, and the fact that other inmates with incident reports would be released back into general population whereas Brown was transferred. The attachment only mentions Dean where Brown states "I learned from Mr. Dean, SIS, that I was allegedly under investigation" (ECF No. 1-1 at 3). It was originally rejected because it was not sensitive; however, Brown was told to file a request via regular procedures (ECF No. 1-1 at 4).

Brown filed the Informal Resolution Form on February 8, 2018. He again complains about Jenkins' use of force, lack of due process, and retaliation. He does not make any reference to equal protection or other inmates being treated

7

differently (ECF No. 1-1 at 5). He then moved on to the next step, and his attachment is a replica of his original sensitive grievance (ECF Nos. 1-1 at 6-7 & 21-2 at 37-38). At the regional level, he stated no use of force was necessary, Jenkins violated BOP standards of employee conduct, Nash should have reprimanded Jenkins, his due process rights were violated, and the transfer was done in retaliation. Brown did not mention equal protection at this step or complain about other inmates being treated differently (ECF No. 1-1 at 9). At the final step, Brown again only mentions Nash and Jenkins, does not complain about preferential treatment, and does not add any additional issues (ECF Nos. 1-1 at 11 & 21-2 at 25).

Brown has not exhausted any claims against Dean. His statement that Dean told him he was under investigation does not indicate that Brown had an issue with Dean's conduct, and Brown's description of events do not provide sufficient details to put Dean on notice of the issues over which he is currently being sued. Merely referencing Dean without accusing him of wrongdoing is not sufficient. *Butts*, 877 F.3d at 583. Therefore, Dean should be dismissed without prejudice.

Because Brown does not mention the allegedly unsanitary food service at any point, Defendants did not receive "fair notice" of this claim. Therefore, Brown's conditions of confinement claim regarding unsanitary food service is unexhausted and should be dismissed without prejudice. The only time Brown complained about other inmates being treated differently was on form BP-9, where he stated Nash and Jenkins gave preferential treatment to inmates and other inmates were

released back into general population. Brown was required to "state specifically the reason for appeal." 28 C.F.R. § 542.15(b)(1). However, neither his BP-10 or BP-11 include any language that could place the Defendants on notice of his equal protection claim. *See Butts*, 877 F.3d at 583-84. Therefore, Brown's equal protection claim should also be dismissed without prejudice.

Although Defendants argue that Brown also did not exhaust his due process or retaliation claims, the undersigned disagrees. Brown included language at each step sufficient to put the Defendants on notice of these claims.

## C. Cruel and Unusual Punishment

Brown claims that Jenkins' use of a chemical spray constitutes excessive force. He also appears to allege that being placed in segregated housing and transferred to a higher security facility constitutes cruel and unusual punishment. Defendants argue that Brown's claim is not cognizable under *Bivens* and should be dismissed.

First, with respect to his possible allegation that being placed in segregated housing and transferred violate the Eighth Amendment, Brown has not "suffer[ed] punishment that rises to the level of an 'unnecessary and wanton infliction of pain.'" *McDowell v. Reese*, No. 4:09-cv-126-HTW-LRA, 2009 WL 5215335, at *1 (S.D. Miss. Dec. 28, 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Blakeney v. Holman*, No. 3:12-cv-416-JMR, 2013 WL 4483433, at *4 (S.D. Miss. Aug. 19, 2013) ("Although prisoners have a right to be free from cruel and unusual punishments, they have no constitutionally protected interest to serve their

9

sentence in a particular institution, or to be transferred or not transferred from one institution to another").

Further, because Brown is seeking monetary damages against federal officials in their individual capacities for an alleged constitutional violation, he is seeking a remedy under *Bivens*. In *Bivens*, the Supreme Court held that a plaintiff injured by a federal agent could recover damages despite the absence of a federal statute granting such a right. *Bivens* specifically dealt with the Fourth Amendment. 403 U.S. at 389. However, the Supreme Court has only extended *Bivens* in two other contexts: employment discrimination under the Fifth Amendment and prison officials' failure to provide medical care under the Eighth Amendment. *Carlson v. Green*, 446 U.S. 14 (1980); *Davis v. Passman*, 442 U.S. 228 (1979).

The Supreme Court has now "adopted a far more cautious course before finding implied causes of action," as "it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855-56 (2017). Ultimately, "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675).

Because Congress, not the Judiciary, should generally decide whether to provide a damages remedy, courts must consider whether a *Bivens* claim is in a "new context" and whether there are any "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 1857-59; *see also Hernandez v.*

10

*Mesa*, 885 F.3d 811, 816-19 (5th Cir. 2018). A case "presents a new *Bivens* context" if it "is different in a meaningful way from previous *Bivens* cases." This can include differences such as:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the function of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859-60. With respect to the "special factors," the analysis primarily focuses on "separation-of-powers principles," with courts "concentrat[ing] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Hernandez*, 885 F.3d at 818 (quoting *Abbasi*, 137 S. Ct. at 1857-58). These special factors will "cause a court to hesitate before answering that question in the affirmative." *Abbasi*, 137 S. Ct. at 1858.

Although *Bivens* dealt with an excessive force claim, it was a Fourth Amendment excessive force claim. Further, *Bivens* involved federal law enforcement officers, whereas the District Court for the Western District of Texas has found that federal law enforcement officers, such as VA police officers, are unlike the "federal facilities warden and assistant warden" in *Abbasi*. *Oliva v. United States*, EP-18-CV-15-FM, 2019 WL 136909, at *4 (W.D. Tex. Jan. 8, 2019). Additionally, as noted by the Defendants, district courts in Florida and California have found that federal

11

inmates' Eighth Amendment claims presented a new context under Bivens. *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1170 (E.D. Cal. 2018) (assault); *Taylor v. Lockett*, No. 5:17-cv-23-Oc-02PRL, 2019 WL 764023, at *7 (M.D. Fla. Feb. 21, 2019) (sexual assault). Therefore, the undersigned finds that Brown's Eighth Amendment claims present a new *Bivens* context.

Next, the Court must consider whether special factors counsel hesitation in extending the *Bivens* remedy. Although the Supreme Court "has not defined the phrase 'special factors counselling hesitation,'" "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy . . . ." *Abbasi*, 137 S. Ct. at 1857-58. One frequently considered "special factor" is the presence of an alternative remedial structure, such as the prison grievance system: "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858; *see also Hunt*, 336 F. Supp. 3d at 1169 ("It is clear that Plaintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief"); *Taylor*, 2019 WL 764023, at *7 (collecting cases) ("Multiple courts have found that the BOP's grievance process is an alternative remedy that cuts against extending the *Bivens* remedy"). Because Brown had access to the grievance system, even if he was ultimately unhappy with the result, this is a special factor counseling hesitation.

Another such special factor is "legislative action suggesting that Congress does not want a damages remedy." *Abbasi*, 137 S. Ct. at 1865. Because Congress has considered prisoner abuse in the context of passing the PLRA and has "been active in the area of prisoners' rights," there are sufficient reasons that should cause this Court to hesitate before extending *Bivens*. *Id.*; *Taylor*, 2019 WL 764023, at *8. Additionally, "concerns of institutional security" also counsel hesitation, as "Congress is better suited than the judiciary to 'balance the challenges prison administrators and officers face in maintaining prison security against the expansion of the private right of action for damages.'" *Taylor*, 2019 WL 764023, at *8 (quoting *Florence v. Bd of Chosen Freeholders*, 566 U.S. 318, 327-28 (2012)); *Butler v. Porter*, No. 2:17-cv-230, 2018 U.S. Dist. LEXIS 218270, at *10 (W.D. La. Sept. 10, 2018). In light of these special factors, the undersigned finds that the *Bivens* remedy should not be extended to Brown's Eighth Amendment claims. Defendants' Motion should be granted in this respect and Brown's claims concerning excessive force should be dismissed with prejudice. His arguments concerning the legitimacy of the use of force (ECF No. 23 at 5-6) do not change this outcome.

### D. First Amendment and Retaliation

Brown alleges that Defendants violated his First Amendment right to seek redress of grievances by failing to respond to the grievances he filed. In his response to the Defendants' Motion, Brown states that his First Amendment claim "primarily rests on retaliation for his seeking redress of grievances" (ECF No. 23 at 8).

13

Defendants argue that they are entitled to qualified immunity on this claim.

Qualified immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald* 457 U.S. 800, 818 (1982)). Qualified immunity thus protects "all but the plainly incompetent or those who knowingly violate the law," and "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Accordingly, a government official is entitled to immunity from suit unless (1) a plaintiff has made allegations sufficient to show a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the official's alleged misconduct. *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201)). These two prongs need not be addressed in a particular order, and failure to satisfy either may be dispositive. *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) (citing *Pearson*, 555 U.S. at 236).

Ultimately, Brown has no constitutional right to the existence of a grievance procedure and no constitutional interest in having his grievance resolved to his satisfaction. *Guillory v. Hodge*, No. 2:14-cv-156-MTP, 2015 WL 1968636, at *1 (S.D. Miss. Apr. 30, 2015) (citing *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005)); *see also Lijadu v. I.N.S.,* No. 06-0518, 2007 WL 837285, at *3 (W.D. La. Feb. 21, 2007) ("detainees 'do not have a constitutionally protected right to a grievance

procedure'—much less one that complies with their own personal preferences"). "A prison official's refusal to entertain an inmate's grievance as it relates to a constitutional right does not compromise the inmate's right to petition the government for redress." *Buckley v. Pearsons*, No. 5:10-cv-17-DCB-RHW, 2011 WL 3022539, at *2 (S.D. Miss. May 25, 2011) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

To the extent Brown argues that he was put in segregated housing and transferred in retaliation for filing grievances, he must "establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* at 686.

However, courts must regard retaliation claims with caution: "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in . . . penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). A prisoner's "personal belief that he was the victim of retaliation is not sufficient to support a retaliation claim." *Ybarra v. Meador*, 427 Fed. App'x 325, 326 (5th Cir.

2011) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)).

Further, Brown must "establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166. The mere fact that the supposed retaliation occurred around the time that Brown attempted to utilize the prison grievance system is not enough. *Gonzales v. Sarabia*, 720 Fed. App'x 213, 214 (5th Cir. 2018) (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)). Even though Brown argues that he should not have been ordered to get in the cage or sprayed with a chemical agent for refusing to comply, his version of events still indicates that he disobeyed a direct order. Therefore, Brown's own conduct supports the Defendants' actions in holding him in the segregated housing unit and transferring him to a different prison. He "has not established that 'but for' the alleged retaliatory motive of the defendants, he would not have been [placed in segregated housing or transferred]" *Sylvester v. Cain*, 311 Fed. App'x 733, 735-36 (5th Cir. 2009) (holding that a prisoner's failure to comply with orders supported the alleged retaliatory disciplinary action). Because Brown cannot show a violation of a constitutional right, the Defendants are entitled to qualified immunity; Brown's First Amendment and retaliation claims should be dismissed with prejudice.

**E. Due Process**

In his due process argument, Brown claims that his right to due process was violated when he was confined to the segregated housing unit and transferred to a different facility because of the September 24, 2017 incident without any type of

notice or hearing or an opportunity to view the surveillance video. As stated above, the undersigned finds that Brown's grievances were sufficient to put the Defendants on notice of this issue. Defendants' only other argument concerning this claim is a footnote that if the Court reaches the substance of Brown's due process claim, it should be dismissed (ECF No. 22 at 8). In their Reply, Defendants also argue that Brown has not satisfied the physical injury requirement of the PLRA (ECF No. 25 at 4-5)

A reply brief "is not the appropriate vehicle for presenting new arguments or legal theories to the court." *AAR, Inc. v. Nunez*, 408 Fed. App'x 828, 830 (5th Cir. 2011) (quoting *United States v. Feinberg*, 89 F.3d 333, 340-41 (7th Cir. 1996)). Additionally, Courts should generally not dismiss a prisoner's complaint for failure to state a claim before the plaintiff has been given an opportunity to amend. *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). Although the Court has sought clarification from Brown (ECF No. 7) and he has provided a response (ECF No. 8), Brown has not amended his Complaint in this action, nor has the Court conducted any type of hearing. Therefore, the undersigned recommends that Defendants' Motion (ECF No. 21) be denied without prejudice with respect to Brown's due process claim at this time. Brown should be allowed to further develop this claim.

However, he is cautioned that "segregated confinement is not grounds for a due process claim unless it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Wilkerson v. Goodwin*, 774 F.3d

845, 853 (5th Cir. 2014) (quoting *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008)). The only hardship Brown appears to allege at present is that Nash "smirked" at him (ECF No. 23 at 10). Additionally, "inmates do not have a constitutionally protected property or liberty interest in housing in certain facilities." *Adeleke v. Heaton*, 352 Fed. App'x 904, 908-09 (5th Cir. 2009) (citing *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir. 1988)). Nor does the Due Process Clause "require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive." *Nelson v. Phillips*, No. 5:05-cv-43-DCB-MTP, 2007 WL 778501, at *4 (S.D. Miss. Feb. 2, 2007) (quoting *Montayne v. Haymes*, 427 U.S. 236, 242 (1976). His failure to substantiate his due process claim may result in dismissal.

### III. RECOMMENDATION

Based on the above analysis, the undersigned recommends that the Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 21) be granted in part and denied without prejudice in part. Defendant Dean should be dismissed without prejudice based on Brown's failure to exhaust any claims against him. Brown's claim regarding unsanitary food service and his equal protection claim should also be dismissed without prejudice based on his failure to exhaust. Brown's excessive force claim should be dismissed with prejudice because the *Bivens* remedy should not be extended to this context. Brown's First Amendment and retaliation claims should be dismissed with prejudice as the Defendants are entitled to qualified immunity. Brown's due process claim should be allowed to proceed.

## IV. NOTICE OF RIGHT TO OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 13th day of December, 2019.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE