UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANTHONY JAI BROWN                                                              PLAINTIFF

V.                                               CIVIL ACTION NO. 3:18-CV-528-DPJ-JCG

WARDEN CHERON NASH, ET AL.                                         DEFENDANTS

ORDER

        This pro se *Bivens* action is before the Court on Defendants' Motion to Dismiss or for

Summary Judgment [21], the Report and Recommendation [29] of United States Magistrate

Judge John C. Gargiulo, and Plaintiff Anthony Jai Brown's Objections [44] to the R&R.[1]  As set

forth below, the Court adopts the R&R.  Defendants' Motion to Dismiss or for Summary

Judgment is denied without prejudice as to the due-process claim against Defendants Warden

Cheron Nash and Associate Warden Sylvester Jenkins but is otherwise granted.

I.      Facts and Procedural History

        The basic facts are well explained in the R&R:

        [Brown] alleges that while at the Federal Correctional Institution in Yazoo City,
        Mississippi in 2017, he complained and filed grievances about various issues he
        encountered, including harassment while working in the law library, diminished
        work hours, his case manager's failure to address his needs, a mice infestation in
        the dining hall, and the closure of the kitchen. . . .

        Brown's complaints culminated in an incident on September 24, 2017.  He alleges
        that because the law library was frequently closed during scheduled operating
        hours, he asked Nash and Jenkins to open it.  In response, Jenkins ordered Brown
        to go to the Lieutenant's office.  Once there, Brown states that Jenkins ordered
        him to go inside "the cage."  Because Brown believed that he should not be
        punished, he questioned the order.  When Jenkins again ordered him to go inside
        the cage, Brown states that he "turned [his] back, and offered to be taken to the
        [segregated housing unit] in a non-hostile protest to having to stand in the
        claustrophobic cage for no legitimate purpose" (ECF No. 1 at 8).  Jenkins then

_____

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

sprayed Brown once in the back of the head and once in his face with a chemical spray. . . .

In light of this incident, Brown was taken to the segregated housing unit for a few days before being transferred to the United States Penitentiary in Coleman, Florida, a higher security prison. He contends that these actions were taken in retaliation for his complaints. Because he never received an incident report, an administrative detention order, or a hearing, he claims his due process rights were violated. He also contends that his right to equal protection was violated because other prisoners in the segregated housing unit received a report, order, or hearing. He also contends that [Defendant] Dean has violated his due process and equal protection rights because he failed to preserve allegedly exculpatory surveillance footage and "falsified a narrative" regarding the incident (ECF Nos. 1 & 8).

R&R [29] at 1–3.

Judge Gargiulo recommended that Defendants' motion to dismiss be granted in part:

Defendant Dean should be dismissed without prejudice based on Brown's failure to exhaust any claims against him. Brown's claim regarding unsanitary food service and his equal protection claim should also be dismissed without prejudice based on his failure to exhaust. Brown's excessive force claim should be dismissed with prejudice because the *Bivens* remedy should not be extended to this context. Brown's First Amendment and retaliation claims should be dismissed with prejudice as . . . Defendants are entitled to qualified immunity.

R&R [29] at 18. Judge Gargiulo recommended that the motion to dismiss be denied without prejudice as to the due-process claim against Defendants Nash and Sylvester Jenkins. *Id.*

The Court previously adopted Judge Gargiulo's R&R as unopposed after no objections were received nearly a month after it was entered. Order [32]. But after the Court initially adopted the R&R, Brown filed a motion [33] that the Court construed as seeking leave to file

out-of-time objections and granted.  Order [36].[2]  Thereafter, Brown filed his Objections [44],

the Government responded [46], and Brown failed to file a reply.[3]

II.     Analysis

        The Government first argues that Brown's Objections are not timely.  The Court's Order

permitting out-of-time objections ruled that "Brown may file objections . . . on or before

February 24, 2020."  Order [36].  Brown dated his Objections—and their accompanying

certificate of service—February 24, 2020, the envelope was postmarked February 27, 2020, and

the Objections were received and filed by the Clerk of Court on March 2, 2020.  "Under the

prison mailbox rule, a prisoner's pleading is deemed to have been filed on the date that the *pro se*

prisoner submits the pleading to prison authorities for mailing."  *Stoot v. Cain*, 570 F.3d 669, 671

(5th Cir. 2009).  Brown's certificate of service indicates that he timely tendered the Objections to

prison officials for mailing, and there is no evidence to the contrary.  Under the prison-mailbox

rule, the Court considers the Objections timely.  Alternatively, if Brown submitted his Objections

for mailing one or two days late, the Court excuses the brief delay because there is no prejudice

to Defendants.

        As for the merits, Brown insists that he has exhausted his claims against Dean and his

equal-protection, excessive-force, and First Amendment/retaliation claims.  The R&R noted that

---

[2] The Court's Order granting Brown's motion for leave to file out-of-time objections likely passed in the mail with Brown's Notice of Appeal, which was filed on February 3, 2020.  Notice of Appeal [38].  The Fifth Circuit dismissed Brown's appeal for want of jurisdiction on July 17, 2020.  Order [52].

[3] Brown also filed a Motion to Amend [43] and a Motion to Appoint Counsel [53], which Judge Gargiulo will handle in due course.

"Brown does not contest the fact that he only pursued . . . one grievance[, Remedy ID 928634,] through all four steps" of the administrative-exhaustion process.  R&R [29] at 7.[4]

Judge Gargiulo described the process as follows:

Brown originally tried to file his request as "sensitive" with the Regional Director on November 13, 2017.  He stated it was an employee misconduct complaint against Nash and Jenkins, claiming they endangered his safety or caused injury, gave preferential treatment, falsified material facts, engaged in dishonest and disgraceful conduct, and engaged in conduct that could lead others to question their impartiality (ECF No. 1-1 at 2).  In [Brown's] attachment [to that initial request], he references the complaints he made that had not been addressed, the alleged excessive use of force, the lack of an incident report or detention order, and the fact that other inmate with incident reports would be released back into general population whereas Brown was transferred.  The attachment only mentions Dean where Brown states "I learned from Mr. Dean, SIS, that I was allegedly under investigation" (ECF No. 1-1 at 3).  [The request] was originally rejected because it was not sensitive; however, Brown was told to file a request via regular procedures (ECF No. 1-1 at 4).

Brown filed the Informal Resolution Form on February 8, 2018.  He again complains about Jenkins' use of force, lack of due process, and retaliation.  He does not make any reference to equal protection or other inmates being treated differently (ECF No. 1-1 at 5).  He then moved on to the next step, and his attachment is a replica of his original sensitive grievance (ECF Nos. 1-1 at 6–7 & 21-2 at 37–38).  At the regional level, he stated no use of force was necessary, Jenkins violated BOP standards of employee conduct, Nash should have reprimanded Jenkins, his due process rights were violated, and the transfer was done in retaliation.  Brown did not mention equal protection at this step or complain about other inmates being treated differently (ECF No. 1-1 at 9).  At the final step, Brown again only mentions Nash and Jenkins, does not complain about preferential treatment, and does not add any additional issues (ECF Nos. 1-1 at 11 21-2 at 25).

R&R [29] at 7–8.

As to the claims against Dean, Judge Gargiulo concluded that Brown's statement in his initial request "that Dean told him he was under investigation" did not "indicate that Brown had an issue with Dean's conduct" or "put Dean on notice of the issues over which he is currently

---

[4] The four steps of that process are:  (1) informal resolution (BP-8); (2) formal administrative "step-one" grievance (BP-9); (3) regional appeal (BP-10); and (4) national appeal (BP-11).  *See* 28 C.F.R. §§ 542.13–542.15; *Petzold v. Rostollan*, 946 F.3d 242, 254 (5th Cir. 2019).

being sued." *Id.* at 8.  He therefore concluded that the claims were not exhausted.  Brown now

says that the fact that Dean "was mentioned by name in Brown's BP-9 on 11/13/17" put Dean

"on notice of Brown's complaint surrounding an event that by virtue of his position he was an

active participant."  Objections [44] at 5.

     A claim is exhausted only if the "inmate's grievance [is] sufficiently specific to give

'officials a fair opportunity to address the problem that will later form the basis of the lawsuit.'"

*Zebrowski v. U.S. Fed. Bureau of Prisons*, 558 F. App'x 355, 359 (5th Cir. 2014) (quoting

*Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004)).  Nothing in Brown's exhausted

grievance gave Dean any reason to believe he was being accused of—or gave Defendants an

opportunity to address—constitutional violations based on "fail[ure] to preserve allegedly

exculpatory surveillance footage and 'falsif[ying] a narrative' regarding the [excessive-force]

incident."  R&R [29] at 3.  Because Brown failed to include the claims against Dean in the

exhausted grievance, Judge Gargiulo correctly concluded that they should be dismissed without

prejudice.

     As to the equal-protection claim, Judge Gargiulo noted,

> The only time Brown complained about other inmates being treated differently
> was on form BP-9, where he stated Nash and Jenkins gave preferential treatment
> to inmates and other inmates were released back into general population.  Brown
> was [then] required to "state specifically the reason for appeal."  28 C.F.R.
> § 542.15(b)(1).  However, neither his BP-10 or BP-11 include any language that
> could place . . . Defendants on notice of his equal protection claim.

R&R [29] at 7–8.  In other words, Judge Gargiulo concluded that while Brown's initial grievance

referenced a potential equal-protection claim, he failed to exhaust the claim through the process.

     In his Objections, Brown argues that he exhausted this claim because he included it in the

initial grievance and exhausted the denial of that grievance.  According to Brown, "[i]nmates are

not required to restate every issue at each level of appeal.  Inmates are required to complete

appropriate forms and state reasons for appeal.  The original filing is included at each stage.

Plaintiff properly exhausted the administrative remedies."  Objections [44] at 8.  Brown offers no

legal authority in support of that argument, and it is not persuasive.  Courts in the Fifth Circuit

"take[] 'a strict approach' to the exhaustion requirement."  *Butts v. Martin*, 877 F.3d 571, 582

(5th Cir. 2017) (quoting *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)).  Under that

approach, "mere 'substantial compliance' with administrative remedy procedures does not

satisfy exhaustion."  *Id.* (quoting *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010)).  The

applicable procedures required Brown to attach his original institution Request to each level of

appeal, using Forms BP-10 and BP-11, and to "state specifically the reason for appeal."  28

C.F.R. § 542.15(b)(1).

Under those regulations, initial Requests will always be part of the record, but the inmate

must "specifically" inform BOP which issues remain disputed.  *Id.*  Brown's BP-10 and BP-11

did not specifically state that he was appealing his equal-protection claim.  Accordingly, they

were not sufficiently specific to "give[] officials a fair opportunity to address the problem that . .

. later form[ed] the basis of the lawsuit."  *Johnson*, 385 F.3d at 517.

A similar thing happened in *Butts v. Martin*. There, the parties disputed whether the

inmate exhausted an illegal-search claim that was referenced in his original factual summary but

excluded from his BP-11.   877 F.3d at 583.  Butts argued that the omission was harmless

because his attached summary mentioned illegal searches, whereas the prison officials insisted

that Butts failed to attach the summary to his BP-11.  *Id.*  Despite this factual dispute, the Fifth

Circuit bypassed the issue, holding:  "In any event, Butts was required to 'state specifically the

reason for appeal' in his BP-11, *see* 28 C.F.R. § 542.15(b)(1), and his BP-11 itself does not

mention searches."  *Id.*  Here, neither Brown's BP-10 nor BP-11 mentioned equal protection as a

specific basis for appeal.  Judge Gargiulo correctly concluded that Brown failed to exhaust this claim.[5]

Judge Gargiulo concluded that Brown's excessive-force claim should be dismissed with prejudice because the *Bivens* remedy should not be extended to this context.  Brown's Objections acknowledge this conclusion but argue that "[t]o bar Plaintiff's well-pleaded facts in this matter because it presents a 'new *Bivens* context' deprives him of his rights and humanity."  Objections [44] at 17.  And he further argues that his Eighth Amendment claim "should be ruled on because of the rank of officers involved."  *Id.* at 10 (capitalization altered).  These equitable arguments cannot overcome Judge Gargiulo's thorough and correct *Bivens* analysis.  The excessive-force claim is dismissed.

Finally, Judge Gargiulo concluded that Defendants were entitled to qualified immunity on the First Amendment and retaliation claims.  Brown does not address qualified immunity or Judge Gargiulo's conclusion that because "Brown cannot show a violation of a constitutional right, . . . Defendants are entitled to qualified immunity."  R&R [29] at 14.  The Court agrees with Judge Gargiulo's conclusion and grants Defendants qualified immunity on the First Amendment and retaliation claims.

III.    Conclusion

The Court adopts the Report and Recommendation [29].  Defendants' Motion to Dismiss or for Summary Judgment [21] is denied without prejudice as to the due-process claim against Defendants Nash and Jenkins but otherwise granted.

---

[5] Even if Brown had exhausted his equal-protection claim, it would immediately fail on the merits.  Brown is proceeding *in forma pauperis*, thus triggering § 1915(e)(2)(B) of the PLRA.  Under that section, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim."  28 U.S.C. § 1915(e)(2)(B)(ii).  Brown fails to state a valid equal-protection claim for the reasons the Government previously asserted.  Reply [25] at 7–9.

**SO ORDERED AND ADJUDGED** this the 10th day of August, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE